The next case is United States v. Cardenas. It please the court. James Gross for Mario Cardenas. Mario Cardenas came to this country as a minor and quickly began submitting applications for temporary protective status in this country as well as to allow him to work in the country, employment authorization applications. The government charged him with visa fraud with respect to six applications, three employment authorization applications, three temporary protected status applications. But the operative language in the indictment for each of those six applications. The same alleged fault statements for each of the six counts in the indictment. Yes, Your Honor. And the allegation was that Mario had Mr. Cardenas had affirmed that he was a citizen of El Salvador, born and made upon El Salvador when he went as he then well knew he was a citizen of Guatemala. Was that not so? That was almost entirely not so, Your Honor. What was different other than the city? The city, of course, was the most, well, one of the. Other than the city. Other than the city. The language doesn't make any sense because it is in the record established through Agent Paraga that a person can be a citizen of two countries at the same time, Guatemala and El Salvador. And so when the government alleged that he was affirming that he was a citizen of El Salvador, when he well then knew he was a citizen of Guatemala, those two statements were not in contradiction. Mr. Cardenas was both a citizen of Guatemala and of El Salvador. And I think the record was absolutely clear on that to the point where if the jury were to convict him for lying about being a citizen, they would have been totally ignoring the evidence that was in front of them. Mr. Cardenas had a birth certificate from El Salvador. There were records that were discovered by Agent Paraga in El Salvador showing that his citizenship had been registered there. Was your argument that the evidence was insufficient for the jury to have determined that it was a false statement, the affirmation that he was a citizen of El Salvador? Correct. It was an absolutely true statement on his fact that he was a citizen of El Salvador. In fact, the government agents tried to go back to El Salvador and get them to revoke his citizenship because they believed it was based on a fraud. Our government believed that the grant of citizenship by El Salvador was based on a fraud. And El Salvador refused to revoke the citizenship. And in fact, Jennifer Cardenas and I believe Mario Cardenas both went to the consulate in New York City here to get passports from El Salvador. They looked at their records and gave them passports. And when our government went back and tried to revoke that citizenship, El Salvador refused to do it. So Mario Cardenas was a citizen of El Salvador when he applied for TPS. He was a citizen of El Salvador when he was being investigated. He continued throughout the trial to be a citizen of El Salvador. And it seems clear that the grand jury didn't look at these applications because they charged him with lying and saying he was born in Medapan when, in fact, he wasn't born in Medapan. And his applications didn't say he was born in Medapan. And similarly, it appears that the grand jury was not instructed on dual citizenship because they found him, they indicted him for affirming he was a citizen of El Salvador when he knew he was a citizen of Guatemala. Was there a request to instruct the jury on dual citizenship? Not specifically. A request for such an instruction by the defense? There was not a request, as I recall, for an instruction on dual citizenship, Your Honor. There was, you know, quite a bit of discussion of whether this could be broken into two separate crimes, one for lying about birth and one for lying about citizenship. And there was evidence before the jury that the El Salvadorian birth certificate was fraudulent, right? There was evidence before the jury that there were questions raised about the record keeping in El Salvador which suggested that perhaps it might have been fraudulent, correct? Because they were not found in the records in El Salvador. It's a little bit complicated that the agent went back to El Salvador and examined a book there where the birth certificates were listed. And according to the agent, we never saw this book. It was never produced. The jury never saw it. But according to the agent, it was there but listed in a way that was kind of out of order which suggested perhaps it had been added at a later date. But there were records of that birth in Guatemala. I'm sorry, in El Salvador and El Salvador. Were there pictures of what, before the court and the jury, pictures of what, in fact, the agent found there out of order? There was not, Your Honor. I believe my time is up. That's okay. Good morning, Your Honors. May it please the court. I'm Lucas Anderson here for Jennifer Cardenas. Criminal defendants have a substantial right to be tried only on charges that are presented to a grand jury. In this case, the district court determined at the end of the trial that the jury could convict the defendants on the basis of an entirely uncharged conduct. Because the core of criminality, the offense conduct that was charged here, was that the defendants had misrepresented their country of citizenship, not their place of birth. Now, we argue that even that wasn't sufficiently alleged or approved at trial, but I'll address our sufficiency arguments later. Because it wasn't until the last charge conference, after all the evidence was in, that the defendants were told for the first time that the jury was going to be permitted to convict them on the alternative theory that they had misrepresented their place of birth. I know Your Honors asked some questions about those birth certificates in El Salvador. And if you look at what the indictment actually charged them with, questions about their birth certificates were entirely irrelevant, because they were not charged with misrepresenting their place of birth. And they didn't have any notice that the indictment was duplicitous, that each count somehow charged them with two separate visa fraud crimes, until they were told right at the end of trial about what the jury was going to be charged with. Well, the indictment, I mean, help me understand this. The indictment language says charges false statements. And then there are two factual statements in the first portion of the charge, that the defendant was a citizen of El Salvador, which is a factual statement, and born in El Salvador. And those are the only two statements that charge a statement made by the defendant. So why isn't it charging that both of those things are false? Because it doesn't say that they were false. It provides another statement that says that she knew very well that she was a citizen of Guatemala. But that's like saying somebody said that they had blue eyes when they very well knew that they had glasses. It's not inconsistent whatsoever. There's nothing in the indictment's language that actually alleges inconsistencies. It doesn't allege false statements that she affirmed, or that she made false statements in affirming that she was a citizen of El Salvador. When she then well knew that she was a citizen of Guatemala, which is not inconsistent. So if an indictment says that you've made a false statement in saying that you're six feet tall, and that's that, perhaps that would be sufficient under some other statute. But in this statute, you have to allege what the actual falsity of the statement is. And we cited cases, the Russell case and the Pirro case in our brief, about the particularities with which you have to allege that something is false. You can't just say in the Pirro case, for example, oh, this marriage was false. They didn't have a right to claim that they were married without actually alleging the fact that the marriage was in fact void under New York law. So you have to not just say the words false statement. You have to actually detail some sort of contradiction in the statute. And either way, the defendants were absolutely not put on any notice that they would have to defend against questions about birthplace under the language of this statute, which seems to have tried to imply that they had misrepresented their country of citizenship. But, you know, making this indictment duplicitous at the last moment, charging them with two separate crimes under each count, it also raises double jeopardy considerations. We don't know what crime Ms. Cardenas was actually found guilty of by the jury or whether they actually acquitted her of one of those two things. And so I want to quickly address our sufficiency arguments because it's important to note with respect to both of them that the government's brief doesn't identify one bit of evidence in the record to indicate that Ms. Cardenas is not, in fact, a citizen of El Salvador. And they actually conceded that there wasn't sufficient evidence about that at trial. You can see pages 369 and 528 of the appendix for that. And apparently the grand jury didn't see any evidence of that either because they didn't even allege that she was not, in fact, a citizen of El Salvador. And so that means two separate things. First, that the conviction wasn't supported by sufficient evidence. And second, that the indictment's failure to even allege a false statement was a plain error in that it affected the defendant's substantial rights and likely affected the outcome of the proceeding. It's plain that critical elements of a statute have to be sufficiently alleged. And it affected their substantial rights because if the grand jury had been told, no, you actually have to allege an inconsistency, a false statement, they may not have been able to, at least not with respect to citizenship. Maybe they would have charged some other false statements, such as the port of entry or the fact that they didn't have continuous residence if they found that. And that would have affected everything, every aspect of the case going forward, including trial strategy, the decision whether to testify, everything. So it qualifies as a plain error under Rule 52B. I see my time is up. If there are no further questions from the Court, I reserve my time. Thank you. May it please the Court, Paul Silver on behalf of the United States. First, with respect to constructive amendment, the claim that's being raised is that only citizenship was raised in the indictment as a false statement. As Judge Livingston noted, the indictment alleges false statements in the plural. I would add to that as to material facts in the plural so that when one looks at any particular account of the indictment, there is the reference to citizenship in El Salvador and the mistaken reference to El Matapan, the place of birth. So those two components of each count appear in each count in which the defendants were named. And because of that, the judge's instructions to the jury that they could convict on any count if they were unanimous as to either of those false statements did not expand the charge that was levied in the indictment against either defendant. But as you suggest, there was a variance at trial because the evidence did not suggest that either defendant was born in Matapan. I don't necessarily concede that there was a variance. Obviously, there was a mistake that should not have occurred. My only reluctance in characterizing it as a variance is that the difference in facts in the indictment and introduced in evidence must be material. And in this case, any city, if the defendants claim to have been born in any city in El Salvador, El Matapan... You're saying which city it is is not material. Thank you very much, Your Honor. So for that reason, I don't think that there is a variance. If there is a variance, I don't think there's any question that the defendants were not surprised by the variance and therefore prejudiced by the variance. They don't claim to be at any point, and nor could they because all of the discovery materials which include in the appendix, obviously the documents that the defendants falsely subscribed, indicated that the claim of birthplace was San Salvador. So even if there was a variance, there was no prejudice, and it is not like a constructive amendment requiring per se reversal. They must demonstrate prejudice from that fact. With respect to the sufficiency of the evidence, I'm really surprised to hear a claim that there was no indication that the defendants were not citizens of El Salvador. I mean, that was the gist of the whole case, and in any event, I don't think there's any question but that the jury was entitled to conclude based on the testimony about the El Salvadoran birth certificates that they were false. I mean, first of all, each defendant had both an El Salvadoran birth certificate and a Guatemalan birth certificate. One of them had to be false or fraudulent. They could not have been born in both places. There was testimony that both Jennifer's and Mario's birth certificates indicated the same book and page number, which would never happen if they were not fraudulent, and that was the testimony that at that book and page number, neither of those birth certificates was recorded. It was an entirely different individual listed at that point. Secondly... Did they produce the copies that you're referring to? I don't think so, Your Honor, no. You said where they were. Correct. More importantly, when Jennifer testified, she admitted that she was born in Guatemala, necessarily rendering her El Salvadoran birth certificate fraudulent, and although... This is an interesting question, and that is I'm not sure I could testify where I was born. I don't remember it very well. I mean, even that is a hearsay, I suppose, isn't it? Well, there was no hearsay objection, Your Honor. Or could we testify to what our names are? I suppose it would be similar. Oh, sir. Mario did not testify, but the jury got to see state records relating to his marriage, where he claimed to be having born in Guatemala and a Guatemalan citizen, and Mario also submitted subsequent immigration documents relating to a requested change in status based on his marriage, where he indicated that he was a Guatemalan citizen. So with those facts and with Jennifer's testimony, it's, I think, very clear that the birth certificates from El Salvador were not legitimate. Also with respect to Jennifer, when a search was conducted of her residence, yet another El Salvadoran birth certificate was located in the house with yet another place of birth. El Refugio, I apologize if my pronunciation is wrong. Also found in the house were the Guatemalan passports that Jennifer and Mario used to come into the country. On all of the documents in question, and the six that form the basis of the counts of conviction, Mario and Jennifer both indicated that they came into the country without inspection, I believe in San Cedro, California, crossing the border without inspection. Yet it was documented that both entered the country in Los Angeles on Guatemalan passports and Guatemalan visas. So, I mean, the evidence... I'm a little reluctant to say overwhelming because I don't want to overstate the case, but the evidence was very strong that Mario and Jennifer were both Guatemalan citizens born in Guatemala, traveled on those passports, and had nothing to do with El Salvador, but for their claims of El Salvadoran citizenship. Was there any discussion of the possibility of dual citizenship and what effect that might have on the availability of protective status? There was some discussion of dual citizenship to the extent that it is possible for someone to have such dual citizenship, but there was no evidence at all other than Jennifer telling a story about her father telling her at one time that even though you're born in Guatemala, you have dual citizenship. That was it. I take it the evidence was more about dual birth than dual citizenship. That is, being born in two places, not being a citizen. I think that's fair, Your Honor. Yes. But there was no... Other than Jennifer's own statement, which the jury did not have to credit, I don't think there was any evidence of El Salvadoran citizenship or birth. Either one. Finally, with respect to the indictment itself, while it may not be necessarily inconsistent to say one knew he or she was from Guatemala, you can't read out of the counts of the indictment the fact that the statement about citizenship and birth is alleged to be false. Both are alleged to be false. So even if the statement about Guatemala had not been in the count of the indictment, the indictment would be sufficient because the defendant was alleged to have made these two false statements. Unless the Court has any other questions, I'm prepared to rely on the papers. Thank you, Your Honors. Your Honors, I would go back to, again, the operative language in the indictment. The indictment charges that Mario Cardenas affirmed that he was a citizen of El Salvador. That is the core of what the government was arguing.  affirmed that he was a citizen of El Salvador. that he affirmed that he was a citizen of El Salvador essentially when he wasn't a citizen of El Salvador. In fact, and I think the record will establish this, he was a citizen of El Salvador. He had a birth certificate from El Salvador. He went to the consulate with that supposed fraudulent birth certificate and was granted a passport on the basis of that. So it's birth that makes him a citizen there. He was born there and that's the basis for your assertion of his citizenship. That is one of the ways that you can get citizenship. I understand, but that's in this case what you're asserting. Obviously, you can go there and you can be an immigrant and get citizenship. But in this case, you're saying he was born there and therefore was a citizen. In El Salvador, there's a procedure where the parents who were born in El Salvador or born somewhere else can go and register that birth in El Salvador. And that birth was registered in El Salvador. Now, clearly there's evidence to suggest he wasn't born in El Salvador. He was born in Guatemala. But El Salvador accepted that registration of that birth. What do you mean by accepted? How did it happen? The birth was registered. It was written down in this book in the town of El Refugio, which the agent went to. He got the official book. He opened up the book. There were their names. They were registered as having been born and having attained citizenship in El Salvador. Now, our government wants to go back and say, well, El Salvador, this was wrong. This was fraudulent. You shouldn't have given them citizenship. Well, maybe it was wrong, maybe it was right, but they gave him citizenship. At what point in time did they do that? When the birth was registered in the book in El Refugio. At the time of birth or thereafter? Sometime after. We don't know when. We don't know when. He was born in 1984. His name, his registry of his birth was in that 1984 birth book. But according to the agent, it was at the end of the list of births and should have been somewhere in the middle somewhere. And that was also a difference between a certificate which had the book, a place in the book where it was supposed to be found. Did I hear that from someone? I believe that there were, that the certificate was issued out of San Salvador, but the birth was registered in this town of El Refugio, if that answers your question. It's very confusing, and it's clearly, you know, Mr. Silver argued that there was nothing to show that he was a citizen of El Salvador, and clearly there was. And again, getting back to this language, which I know I keep getting back to, it appears to me that what he was charged with was lying about his citizenship, and there's no basis for the jury to determine that he had lied about his citizenship. I think when the court looks at . . . What's their status now? Are they still within the United States? They are, Your Honor. Incarcerated or not? Not incarcerated. Still working hard in their two restaurants. Sentence to time served, correct? That's correct, Your Honor. And I would note that the court in its sentencing indicated to the government that it wasn't clear why this case was ever brought, that people who were in this position as children brought to this country, told by their parents or parents to submit applications in this way, clearly had no other choice than to do what their parents did and to submit applications. They never sought to do it under DACA, I take it? Correct. I think they got started submitting applications under TPS, which would have precluded their doing so under DACA. Thank you. Your Honors, all this discussion about birthplace and birth certificates and all the evidence about that would have been relevant if the defendants were actually charged by the grand jury with lying on these TPS forms about their place of birth. But this Court's jurisprudence is very clear. Quote, the indictment must be considered as it was actually drawn, not as it might have been drawn. That's from the Pirro case, which we cited, too. The government's arguments about our constructive amendment issue is essentially that the indictment was duplicitous, that each count charged two separate crimes. They could be convicted of either of them, and that wouldn't raise any Fifth Amendment or double jeopardy concerns. And with respect to the argument that there is no evidence of El Salvadoran citizenship, the government had every opportunity at trial to prove that the defendants weren't in fact citizens of El Salvador. They had an opportunity in their brief on appeal to show some evidence in the record, and here at oral arguments also there's not been one item of evidence to indicate that Ms. Cardenas was not in fact a citizen of El Salvador, which is the only crime that this indictment appeared to try to charge against her. And with respect to this notion that they were on notice, that there was no prejudice, defense counsel at opening arguments said Ms. Cardenas was born in Guatemala because the crux of the case, they thought, was about citizenship, not about birthplace. And then during the first charge conference, the government said, I want to get this quote exactly right, I'm sorry. Let me find it. Quote, that their proof about the citizenship misstatements was, quote, murky, and, quote, not clear cut. That's page 369 of the appendix. So then they argued that they should instead be able to convict if they prove this new theory about misstatement about birthplace. Judge Scullin initially denied that application, and Ms. Cardenas then took the stand and said, yes, I was born in Guatemala, whether it's hearsay or not, and that I'm a dual citizen of El Salvador and Guatemala. After that, Judge Scullin changed his mind and decided that the jury would be told that they could convict under either of these two theories, two crimes under each count, a duplicitous indictment. Finally, during their deliberations, the jury asked one substantive question, and that related to the defendant's birth certificates and their place of birth. So to say that the defendants were somehow on notice because of discovery disclosures that should have served as some alternative charging instrument, the defendants shouldn't have to guess at what they're actually charged with when they're presented with an indictment that only seems to allege, you know, possibly a false statement with respect to their citizenship. That was the crux of the case. Once the government realized that they didn't have sufficient evidence to prove that, they asked for an alternative jury charge that expanded the indictment and effectively doubled the bases under which they could be convicted of, all at the end of trial after all the evidence was in. So if there are no further questions from the court, thank you. Thank you all. Well argued.